**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTERN DISTRICT OF ILLINOIS**

| | |
|---|---|
| ROGER CANNON, MISTI CANNON, in her individual capacity, and MISTI CANNON AS NEXT FRIEND OF R.C., a minor,<br><br>    Plaintiffs,<br><br>v.<br><br>THE CITY OF ANNA, ILLINOIS, ANNA POLICE DEPARTMENT, ANNA-JONESBORO COMMUNITY HIGH SCHOOL DISTRICT #81, BRETT DETERING, ROB WRIGHT, SCOTT FINDERS, CODY HAND, CALEB CLOVER, TIM SMITH, BRENTLEY SIMS and ROGER GOINES,<br><br>    Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)  Case No.<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

## COMPLAINT

COME NOW Plaintiffs, Roger Cannon, Misti Cannon, in her individual capacity, and Misti Cannon as next friend of R.C., a minor, for their Complaint against Defendants, The City of Anna, Illinois, Anna Police Department, Anna-Jonesboro Community High School District #81, Brett Detering, Rob Wright, Scott Finders, Cody Hand, Caleb Clover, Tim Smith, Brentley Sims and Roger Goines, and state:

## JURY DEMAND

1. Plaintiffs demand trial by a jury on all claims.

## VENUE AND JURISDICTION

2. Plaintiffs, Roger Cannon ("Roger") and Misti Cannon ("Misti"), are husband and wife and have been married for twelve (12) years. Roger Cannon is the biological and custodial father of R.C., a biracial child. Roger has full

custody of R.C.  R.C.'s biological mother is African-American.  Roger Cannon and Misti Cannon are Caucasian.

3.      Plaintiffs are all residents of Cobden, Union County, Illinois.  R.C. is currently a junior in high school at Anna-Jonesboro Community High School, in Anna (Union County), Illinois.

4.      Defendants, The City of Anna, Illinois ("the City") and the Anna Police Department ("Anna PD") are both located in the City of Anna, Union County, Illinois.

5.      Defendant, Anna-Jonesboro Community High School District #81 ("the High School"), an Illinois school district, is located in or near Anna (Union County), Illinois.

6.      Defendant, Rob Wright ("Wright"), at all times relevant was the Superintendent of the High School.  He is a citizen of the State of Illinois and is a resident of Union County, Illinois.

7.      Defendant, Brett Detering ("Detering"), at all times relevant was the Principal of the High School.  He is a citizen of the State of Illinois and is a resident of Union County, Illinois.

8.      Defendant, Scott Finders ("Finders"), at all times relevant was the Director of Curriculum & Instruction of the High School.  He is a citizen of the State of Illinois and is a resident of Union County, Illinois.

9.      Defendants, Cody Hand ("Hand"), Caleb Clover ("Clover"), Tim Smith ("Smith") and Brently Sims ("Sims"), are police officers employed by the

2

City and Anna PD.  They are citizens of the State of Illinois and residents of Union County, Illinois.

10.     Defendant, Roger Goines ("Goines"), in an Illinois State Trooper, a citizen of the State of Illinois and a resident of Union County, Illinois.

11.     The Complaint alleges incidents occurring during April and May 2021 at the High School and incidents on or about September 24, 2021 on the High School grounds.

12.     Plaintiffs allege discrimination and retaliation in denial of their rights of free speech, due process of law and equal protection under the First, Fourth, Fifth and Fourteenth Amendments to the United States Constitution and in violation of 42 U.S.C. §1983 *et seq.*

13.     This Court has venue under 28 U.S.C. §1391(b)(1) and (2).

14.     This Court has subject matter jurisdiction under 28 U.S.C. §1331 and 42 U.S.C. §1983 *et seq.* and supplemental jurisdiction over any state law claims under 28 U.S.C. §1367.

## **GENERAL ALLEGATIONS**

15.     R.C.'s former girlfriend is H.L., now 18 years of age.  R.C.'s new girlfriend is M.P. (age 16).

16.     H.L. is now the girlfriend of B.L.  B.L. is biracial, just like R.C. They both have one biological parent who is African-American and one biological parent that is Caucasian.  They are both students in the same class at the High School.

17.     R.C., M.P., H.L., and B.L. are all students at the High School.

18.   R.C. resides with Roger and Misti, who is his custodial stepmother.

19.   During about March 2021, B.L. began to harass R.C. by calling him a "nigger".  B.L.'s harassment of R.C. was related to the fact that B.L. was now dating R.C.'s former girlfriend, H.L.

20.   R.C. complained to several teachers at the High School that B.L. was harassing him by calling him a "nigger".  None of the teachers took any action.

21.   R.C. then complained to the High School Principal, Detering, and the Vice-Principal, Finders.  They, in turn, referred the matter to the Superintendent, Wright.

22.   During a meeting between R.C. and Detering, on or about May 4, 2021, Detering stated that it was not racial harassment for B.L. to call R.C. a "nigger" because they were both biracial.  Detering subsequently denied making that statement.  However, it was recorded.

23.   Roger then complained to the United States Department of Education, Office of Civil Rights ("OCR"), which investigated and issued a report on December 15, 2021.  Roger's Complaint was received by OCR on June 22, 2021, which completed its investigation on December 15, 2021.  OCR then entered into a Resolution Agreement with the High School.

24.   A copy of the Report of OCR is attached hereto as <u>Exhibit A</u> and a copy of the Resolution Agreement between OCR and the High School is attached hereto as <u>Exhibit B</u>.

25.    On May 17, 2021 the High School barred Roger from entering onto the High School grounds, and from attending any public high school events, home or away, without prior written permission of the Superintendent, for a period of one (1) year from May 17, 2021 through May 16, 2022.  The Notice of Bar was issued without a hearing and without notice to Roger, in violation of his due process rights under the Fourth Amendment, and in violation of his free speech rights under the First Amendment, to the United States Constitution.  A copy of the Notice of Bar is attached hereto as Exhibit C.

26.    The statements in the Notice of Bar, Exhibit C, are not true.  The Notice of Bar was issued in retaliation for complaints by Roger to the High School about the harassment of R.C. by B.L. who had been harassing R.C. by calling him a "nigger".

27.    Defendants, Wright, Detering and Finders all urged the High School Board to issue the Notice of Bar as retaliation for his complaints about the racial harassment of Roger's son, R.C.

28.    On or about September 24, 2021, at the night homecoming football game at the High School, H.L. shoved M.P., who retaliated by hitting H.L. in the face with her fist.  R.C. was with his girlfriend, M.P., at that time.

29.    R.C. attempted to leave the parking lot, in his pick-up truck, with his girlfriend, M.P.  At that time and place, Anna PD off duty police officer Smith and State Trooper Goines, both of whom had been drinking alcoholic beverages at the football game, ordered R.C. to vacate the pick-up truck, without announcing themselves as police officers.  They were not in uniform

and R.C. did not know they were police officers.  R.C. refused to vacate the pick-up truck, after which Smith and Goines pulled R.C. from the pick-up truck, handcuffed him and detained him.  R.C. had done nothing that warranted his arrest.

30.    While pulling R.C. from the pick-up truck, Smith and Goines stated, loudly, "get your black ass out of the truck".  They were not in uniform and they did not identify themselves as off duty police officers.

31.    R.C. was handcuffed and detained for more than one (1) hour, but was not charged with a crime.

32.    While R.C. was being accosted by Smith and Goines, he telephoned 911.

33.    Roger lives about two (2) miles from the High School.  He received a telephone call from R.C. and overheard some of the statements by Smith and Goines and the noise from the surrounding crowd of people.

34.    Roger and Misti then drove to the High School to bring R.C. home.

35.    Misti was then arrested and detained by police officers Hand, Clover and Smith and State Trooper Goines, but was not charged with a crime. She was detained for more than one (1) hour.

36.    Roger was then arrested by police officers Hand and Clover, who handcuffed him with his hands behind his back, causing an acromioclavicular separation ("AC joint separation") in his right shoulder.

37.    Roger advised officers Hand and Clover that he could not put his hands behind his back because of previous surgery on his shoulder.

6

Nevertheless, Hand and Clover forced Roger's hands behind his back and handcuffed him causing the AC joint separation in his shoulder.

38.  Roger obtained medical treatment for the separation of his right shoulder at Union County Hospital.  He was required to keep his right arm in a sling for an extended period of time and is still suffering from that injury.

39.  Roger was charged with criminal trespass to real property by entering into the High School grounds allegedly in violation of the bar issued by the High School (Exhibit C).  Roger has been charged with a Class B misdemeanor for allegedly violating the bar (Exhibit C) in Union County, IL Case No. 2021 CM 99, *People of the State of Illinois v. Roger Dale Cannon*. Roger has pleaded not guilty.  Those charges are still pending.

## COUNT I

**Misti Cannon, as next friend of R.C., a minor, against Rob Wright, Brett Detering, Scott Finders, Anna-Jonesboro Community High School #81, Tim Smith and Roger Goines for Discrimination and Retaliation in violation of his Rights of Equal Protection under the Fourteenth Amendment to the United States Constitution and in violation of 42 U.S.C. §1983 *et seq.***

40.  Plaintiff, Misti Cannon as next friend of R.C., a minor, realleges and incorporates herein by reference paragraphs 1 through 38, as fully set forth above.

41.  Defendants, Wright, Detering, Finders, the High School, Smith and Goines, acting under color of state law, pursuant to a conspiracy, discriminated against R.C. on the basis of his race and retaliated against him for complaining that B.L. had harassed him by calling him a "nigger", by failing to take any action by the High School, Wright, Detering, Finders to remedy the

7

racial harassment, and by then pulling him from his pick-up truck on September 24, 2021 by Smith and Goines, while they were off duty, out of uniform, while they had been drinking alcoholic beverages at the football game, and by then handcuffing him and detaining him for a period of more than one (1) hour while yelling at him to "get your black ass out of the truck".

42.   R.C. is within a protected class in that African-Americans, which includes biracial people, may not be discriminated or retaliated against on the basis of their race.  R.C. was denied equal protection of the laws provided by the Fifth and Fourteenth Amendments to the United States Constitution because of his race, as a biracial person, half Caucasian, half African-American.

43.   R.C.'s race was a substantial factor in the above-described actions taken against him.

44.   R.C. is entitled to recover his attorneys' fees under 42 U.S.C. §1988 in a sum in excess of $100,000.

45.   At all times herein relevant, Defendants, the High School, Wright, Detering, Finders, Smith and Goines were acting under the color of state law, pursuant to a conspiracy.  They violated the rights, privileges and immunities granted to R.C. by the Fifth and Fourteenth Amendments to the United States Constitution by denying R.C. equal protection of the laws by taking the actions against him described above, because of his race, causing R.C. to suffer the following damages:

a.    loss of freedom of movement in a sum in excess of $25,000;

b.    extreme mental and emotional distress and anguish in a sum in excess of $100,000; and

c.    humiliation in a sum in excess of $50,000.

46.    The conduct of Defendants, Wright, Detering, Finders, the High School, Smith and Goines, was intentional, malicious, unjustified, outrageous, with an evil intent or motive and with reckless and callous indifference to R.C.'s federally protected rights, warranting an award of punitive damages against the High School in a sum in excess of $100,000, against Wright in a sum in excess of $100,000, against Detering in a sum in excess of $100,000, against Finders in a sum in excess of $100,000, against Smith in a sum in excess of $100,000, and against Goines in a sum in excess of $100,000.

## COUNT II

**MISTI CANNON, AS NEXT FRIEND OF R.C., A MINOR, AGAINST CODY HAND, CALEB CLOVER, TIM SMITH, BRENTLEY SIMS AND ROGER GOINES FOR DISCRIMINATION AND RETALIATION AND FALSE ARREST IN VIOLATION THE FOURTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION AND 42 U.S.C. §1983**

47.    Plaintiff, Misti Cannon, as next friend of R.C., a minor, realleges and incorporates herein by reference paragraphs 1 through 38, as fully set forth above.

48.    At all times herein relevant, Defendants, Hand, Clover, Smith, Sims and Goines, acting under color of state law, were acting pursuant to a conspiracy to falsely arrest and detain R.C. as retaliation for his complaints of racial harassment to the High School and because of his race.  At the time he

9

was pulled out of his pick-up truck on September 24, 2021, Defendants Smith and Goines stated "get your black ass out of the truck".

49.     Defendants, Hand, Clover, Smith, Sims and Goines, pursuant to a conspiracy, falsely arrested and detained R.C. without probable cause in violation of the Fourth and Fourteenth Amendments to the United States Constitution and 42 U.S.C. §1983.

50.     Misti Cannon, as next friend of R.C., a minor, has incurred, and will incur, substantial attorneys' fees in prosecuting this case in a sum in excess of $100,000, which she is entitled to recover under 42 U.S.C. §1988.

51.     The conduct of Defendants, Hand, Clover, Smith, Sims and Goines, was intentional, malicious, willful, wanton, outrageous, and without justification, warranting an award of punitive damages against each Defendant, separately, in a sum in excess of $100,000.

52.     As a direct result of the denial of R.C.'s right to be free of unlawful seizure under the Fourth and Fourteenth Amendments to the United States Constitution, R.C. sustained the following damages:

   a.     loss of freedom of movement in a sum in excess of $25,000;

   b.     extreme mental and emotional distress and anguish in a sum in excess of $100,000; and

   c.     humiliation in a sum in excess of $50,000.

## COUNT III

**MISTI CANNON, IN HER INDIVIDUAL CAPACITY, AGAINST CODY HAND, CALEB CLOVER, TIM SMITH, BRENTLY SIMS AND ROGER GOINES FOR FALSE ARREST IN VIOLATION THE FOURTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION AND IN VIOLATION OF 42 U.S.C. §1983**

53.     Plaintiff, Misti Cannon, in her individual capacity, realleges and incorporates herein by reference paragraphs 1 through 38, as fully set forth above.

54.     At all times herein relevant, Defendants, Hand, Clover, Smith, Sims and Goines, acting under color of state law, pursuant to a conspiracy, falsely arrested Misti, without probable cause, in violation of the Fourth and Fourteenth Amendments to the United States Constitution and 42 U.S.C. §1983 *et seq.*, causing her to sustain the following damages:

      a.    loss of freedom for more than one (1) hour in a sum in excess of $25,000;

      b.    extreme mental and emotional distress and anguish in a sum in excess of $100,000; and

      c.    humiliation in a sum in excess of $50,000.

55.     The conduct of Defendants, Hand, Clover, Smith, Sims and Goines, was intentional, malicious, unjustified, outrageous, with an evil intent or motive and with reckless and callous indifference to Misti's federally protected rights, warranting an award of punitive damages against each Defendant, separately, in a sum in excess of $100,000.

56.     Misti Cannon, in her individual capacity, has incurred, and will incur, substantial attorneys' fees in prosecuting this case in a sum in excess of $100,000, which she is entitled to recover under 42 U.S.C. §1988.

11

## COUNT IV

**ROGER CANNON AGAINST ROB WRIGHT, BRETT DETERING, SCOTT FINDERS, ANNA-JONESBORO COMMUNITY HIGH SCHOOL #81, CODY HAND AND CALEB CLOVER FOR VIOLATION OF HIS DUE PROCESS AND FREE SPEECH RIGHTS UNDER THE FIRST, FIFTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION AND IN VIOLATION OF 42 U.S.C. §1983 *ET SEQ.***

57.    Plaintiff, Roger Cannon, realleges and incorporates herein by reference paragraphs 1 through 39, as fully set forth above.

58.    Roger was denied both procedural and substantive due process of law in that Defendants Wright, Detering, Finders and the High School, acting under color of state law, barred him from the High School grounds without a hearing, without notice, pursuant to a conspiracy, and without an opportunity to be heard, on the basis of false statements made to the school board by those Defendants, who also acted pursuant to a conspiracy with Defendants, Hand and Clover, to arrest Roger on charges of criminal trespass when Roger went to the parking lot to retrieve his son, R.C., who was falsely arrested and detained by police officers Smith and Goines at the September 24, 2021 homecoming football game.  The criminal trespass charge was based on the notice of bar, barring Roger from the school grounds during public events.

59.    Roger's free speech rights under the First Amendment to the United States Constitution were violated when Roger was barred from public events at the High School without reasonable grounds.

60.    The criminal trespass charges were brough against Roger because of the bar issued against him by the school board for the High School barring him from the school grounds for a period of one (1) year.

61.    As a direct result of the denial of Roger's free speech rights and his right of substantive and procedural due process of law under the First, Fifth and Fourteenth Amendments to the United States Constitution and the resulting violation of 42 U.S.C. §1983, Roger sustained the following damages:

    a.    loss of freedom of movement barring him from the school grounds for a period of one (1) year, in a sum in excess of $100,000;

    b.    extreme mental and emotional distress and anguish in a sum in excess of $100,000; and

    c.    permanent injury to his right shoulder, causing an AC joint separation in a sum in excess of $100,000.

62.    Roger Cannon has incurred, and will incur, substantial attorneys' fees in prosecuting this case in a sum in excess of $100,000, which he is entitled to recover under 42 U.S.C. §1988.

## COUNT V

### ROGER CANNON AGAINST CODY HAND AND CALEB CLOVER FOR USE OF EXCESSIVE FORCE IN VIOLATION THE FOURTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION AND 42 U.S.C. §1983

63.    Plaintiff, Roger Cannon realleges and incorporates herein by reference paragraphs 1 through 39, as fully set forth above.

64.    At all times herein relevant, Defendants, Hand and Clover, acting under color of state law, acting pursuant to a conspiracy, used excessive force in arresting Roger on or about September 24, 2021 by placing his hands behind his back and handcuffing him, thereby separating the AC joint in his right shoulder, after Roger advised them that because of a previous surgery on his shoulder, he could not put his hands behind his back.

13

65.    As a direct result of the violation of Roger's right to be free from the use of excessive force under the Fourth and Fourteenth Amendments to the United States Constitution, Roger sustained the following damages:

     a.    permanent injury to his right shoulder and AC joint in a sum in excess of $100,000;

     b.    extreme mental and emotional distress and anguish in a sum in excess of $100,000; and

     c.    humiliation, in a sum in excess of $50,000.

66.    Roger has incurred, and will incur, substantial attorneys' fees in prosecuting this case in a sum in excess of $100,000, which he is entitled to recover under 42 U.S.C. §1988.

## COUNT VI

**ROGER CANNON, MISTI CANNON, IN HER INDIVIDUAL CAPACITY, MISTI CANNON, AS NEXT FRIEND OF R.C., A MINOR, AGAINST THE CITY OF ANNA, IL AND THE ANNA POLICE DEPARTMENT FOR VIOLATION THE FOURTH, FIFTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION 42 U.S.C. §1983**

67.    Plaintiffs, Roger Cannon, Misti Cannon, in her individual capacity, and Misti Cannon, as next friend of R.C., a minor, reallege and incorporate herein by reference paragraphs 1 through 39, 41 through 46, 48 through 52 54 through 56, 58 through 62 and 64 through 66, as fully set forth above.

68.    Defendants, the City and Anna PD, acting under color of state law, had a custom or practice or policy of permitting the denial of equal protection and due process of law to individuals when detaining, arresting or charging African-American citizens, including biracial citizens, because of their race.

14

69.     Defendants, the City and Anna PD, used inadequate hiring and training practices and policies to hire and train their police officers to avoid denying due process of law and to avoid violating the equal protection clause of the Fifth and Fourteenth Amendments to the United States Constitution, and to avoid treating African-Americans and biracial citizens differently than Caucasian citizens.

70.     The hiring and training practices of Defendants, the City and Anna PD, are inadequate in that the Anna PD are not trained to treat members of the public of different races the same.  Instead, they are permitted to discriminate against African-Americans and biracial members of the public.

71.     Defendants, the City and Anna PD, were deliberately indifferent to the rights of others in adopting their policies, customs and practices and in hiring and failing to train their police officers.

72.     By adopting the policies, customs, practices and procedures described above, and by adopting the hiring practices and by failing to train its police officers as described above, Defendants, the City and Anna PD, caused each of the Plaintiffs to sustain damages in violation of the Fourth, Fifth and Fourteenth Amendments to the United States Constitution and in violation of 42 U.S.C. §1983 *et seq.*

   a. by detaining and arresting Misti Cannon in a sum in excess of $25,000 for loss of freedom and for humiliation in a sum in excess of $50,000;

   b. extreme mental and emotional distress and anguish to Misti Cannon in a sum in excess of $100,000;

15

c.  by detaining and arresting R.C. in a sum in excess of $25,000 and for humiliation in a sum in excess of $50,000;

d.  extreme mental and emotional distress and anguish to R.C. in a sum in excess of $100,000;

e.  causing permanent injury to his right shoulder and AC joint to Roger Cannon in a sum in excess of $100,000; and

f.  extreme mental and emotional distress and anguish to Roger Cannon in a sum in excess of $100,000.

73.    Plaintiffs, Roger Cannon, Misti Cannon, in her individual capacity, and Misti Cannon, as next friend of R.C., a minor, have incurred, and will incur, substantial attorneys' fees in prosecuting this case in a sum in excess of $100,000, for each of them separately, which they are entitled to recover under 42 U.S.C. §1988.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs, Plaintiffs, Roger Cannon, Misti Cannon, in her individual capacity, and Misti Cannon, as next friend of R.C., a minor, pray for the following relief and for judgment against Defendants, The City of Anna, Illinois, Anna Police Department, Anna-Jonesboro Community High School District #81, Brett Detering, Rob Wright, Scott Finders, Cody Hand, Caleb Clover, Tim Smith, Brentley Sims and Roger Goines, jointly and severally, for the following amounts:

a)    $25,000 for loss of freedom and for detention and false arrest of Misti Cannon, individually, plus $50,000 for humiliation;

b)    $100,000 for the extreme mental and emotional distress and anguish suffered by Misti Cannon, individually;

16

c)  punitive damages in favor of Misti Cannon and against Defendants, Brett Detering, Rob Wright, Scott Finders, Cody Hand, Caleb Clover, Tim Smith, Brentley Sims and Roger Goines in the amount of $100,000, separately against each said Defendant;

d)  $100,000 attorneys' fees awarded to Misti Cannon, individually and against the Defendants;

e)  $25,000 for loss of freedom and for detention and false arrest of R.C., plus $50,000 for humiliation;

f)  $100,000 for the extreme mental and emotional distress and anguish suffered by R.C.;

g)  punitive damages in favor of Misti Cannon, as next friend of R.C., a minor, and against Defendants, Brett Detering, Rob Wright, Scott Finders, Cody Hand, Caleb Clover, Tim Smith, Brentley Sims and Roger Goines in the amount of $100,000, separately against each said Defendant;

h)  $100,000 attorneys' fees awarded to Misti Cannon, as next friend of R.C., a minor, and against the Defendants;

i)  $100,000 loss of freedom for the bar from the high school's premises for Roger Cannon against all Defendants;

j)  $100,000 for the extreme mental and emotional distress and anguish suffered by Roger Cannon;

k)  $100,000 for the personal injury resulting from excessive force used against Roger Cannon;

l)  punitive damages in favor of Roger Cannon and against Defendants, Brett Detering, Rob Wright, Scott Finders, Cody Hand, Caleb Clover, Tim Smith, Brentley Sims and Roger Goines in the amount of $100,000, separately against each said Defendant;

m)  $100,000 attorneys' fees awarded to Roger Cannon and against the Defendants;

n)  court costs; and

o)  such other and additional relief as the Court deems just and proper.

/s/ David M. Duree
David M. Duree, ARDC 0697087
David M. Duree & Associates, P.C.
312 South Lincoln Avenue
O'Fallon, IL 62269
618.628.0186 (T)/618.628.0259 (F)
law@dmduree.net
*Attorney for Defendants Roger Cannon,*
*Misti Cannon, individually, and Misti*
*Cannon, as next friend of R.C., a minor*

18



**UNITED STATES DEPARTMENT OF EDUCATION**
OFFICE FOR CIVIL RIGHTS

230 SOUTH DEARBORN STREET, 37ᵀᴴ FLOOR
CHICAGO, IL  60604

REGION V
ILLINOIS
INDIANA
IOWA
MINNESOTA
NORTH DAKOTA
WISCONSIN

December 15, 2021

Mr. Roger Cannon
2685 Old Highway 51 N
Cobden, IL 62920

*Sent via email only to:* cannonmisti@gmail.com

OCR Case No. 05-21-1298

Dear Mr. Cannon:

On June 22, 2021, the U.S. Department of Education (Department), Office for Civil Rights (OCR), received the complaint you filed on behalf of your son (Student A) against the Anna-Jonesboro Community High School District (District). The complaint alleged that the District discriminated against Student A based on race (biracial) from April 2021 through the end of the 2020-2021 school year when Student A was racially harassed by another student (Student B), and the District was aware of the harassment but failed to respond appropriately. Hereinafter, you will be referred to as the Complainant.

OCR enforces Title VI of the Civil Rights Act of 1964 (Title VI), 42 U.S.C. § 2000d – 2000d-7, and its implementing regulation, 34 C.F.R. Part 100, which prohibit discrimination on the basis of race, color or national origin by recipients of Federal financial assistance from the Department. As a recipient of Federal financial assistance from the Department, the District is subject to the requirements of Title VI.

OCR investigated the complaint by reviewing documents provided by the District and interviewing the Complainant, Student A, three District administrators, and one District teacher. Prior to the completion of OCR's investigation, the District requested to resolve the complaint under Section 302 of OCR's Case Processing Manual. OCR determined that a 302 agreement is appropriate in this case. A summary of OCR's investigation to date and the 302 agreement follows.

**Background**

During the 2020-2021 school year Student A was a sophomore at the District's only school, Anna-Jonesboro Community High School. The complaint alleges that from April 2021 through the end of the 2020-2021 school year, Student B (biracial), subjected Student A to racial harassment. Student A stated that Student B started calling him the n-word two to three times a week from around the beginning or middle of April 2021 until the end of the 2020-2021 school year. Student A said he reported the racial slurs to his teachers numerous times, but the teachers

The Department of Education's mission is to promote student achievement and preparation for global competitiveness by fostering educational excellence and ensuring equal access.

www.ed.gov

**Exhibit A, Page 1 of 5**

Page 2

told him not to worry about the slurs and to stay away from Student B. Student A said he initially did not report Student B's racial harassment to the Principal because he did not think the Principal would do anything about the slurs. Student A told OCR that on May 4, 2021, the Principal met with him to discuss Student B's report that Student A was bothering him and Student C, Student B's girlfriend. At this meeting Student A decided to report Student B's racial harassment to the Principal.

During the 2020-2021 school year, Student A and Student B had one class together, seventh period Athletic Physical Education.

**Facts**

The Principal told OCR that after school on Friday, April 30, 2021, Student B and Student C told him that Student A had been bothering them, including that same day when Student A and Student D followed them to the school's parking lot, and Student A blocked Student C's car when Student B and Student C were trying to leave the school. The Principal told Student B and Student C that he would look into their complaint.

The Principal reviewed a video of the surveillance footage of the April 30, 2021 incident. He explained to OCR that Student B was having what appeared to be a verbal altercation with Student A, but he could only see Student A's back and could not hear what the two students were saying to each other.

On Tuesday, May 4, 2021, the Principal met separately with Student A and Student B to discuss the April 30, 2021 parking lot incident, show each student the video, and ask each student to describe the incident. The Principal told OCR, and Student A confirmed, that during their May 4, 2021 meeting Student A told the Principal that Student B called him the n-word during the parking lot incident.

Student A told OCR that, during their May 4, 2021 meeting, the Principal said that if Student B called him a racially offensive name there was no harassment because they are both biracial. The Principal advised OCR, although he and Student A discussed racial slurs, he did not make this comment to Student A. The same day the Complainant called the Principal to discuss the Principal's handling of the April 30, 2021 incident. The Complainant said he wanted Student B disciplined for using a racial slur. In addition, the Complainant advised the Principal that Student A had taped the meeting the Principal had with Student A. During the call, the Principal informed the Complainant that his investigation of the parking lot incident was not complete and that he was referring the investigation of the incident to other District administrators because he is the school's football coach and Student B is on the football team. The Principal told OCR he took notes of his meetings with Student A and Student B on note pads that he keeps on his desk in his office but could not locate the notes.[1]

---

[1] The Principal is one of the District's compliance officers. The Principal and the other District compliance officer told OCR they did not receive any training on conducting investigations of racial harassment.

The Department of Education's mission is to promote student achievement and preparation for global competitiveness by fostering educational excellence and ensuring equal access.

www.ed.gov

**Exhibit A, Page 2 of 5**

Page 3

The District's written narrative states that the Principal recused himself from the investigation of the April 30, 2021 parking lot incident and referred it to the District's Superintendent and the Director of Curriculum and Instruction (Director). The District and the Complainant told OCR that the District did not offer Student A support services and Student A and Student B continued to attend the one class they had together with no changes to their schedules.

The Director said the Superintendent told him to investigate whether Student B directed a racial slur at Student A on April 30, 2021. He was not was not told to and did not investigate other racial incidents that occurred between the two students.

The Director, who is not one of the District's compliance officers, told OCR that he did not have any training on conducting investigations of racial harassment. He did not interview Student A during the investigation. On May 11, 2021, the Director interviewed Student B to get his account of the April 30, 2021 incident and Student B denied calling Student A a racially offensive name. The Director did not contact the boys' parents and did not ask Student A or Student B if they could identify any witnesses to the April 30, 2021 incident.

The Director told OCR that he reviewed the video of the April 30, 2021 parking lot incident and, based on the video, identified potential witnesses to interview about the alleged racial slur. The Director interviewed Student C and Student D who, during the parking lot incident, were standing near Student A and Student B and approximately six to eight students and a cafeteria worker, who were in the area during the parking lot incident. He asked each of them if they had overheard a student using a racial slur. Student D told the Director that he heard Student B use the n-word towards Student A. According to the Director, the other interviewees told the Director they had not heard anyone use a racial slur. The Director told OCR he took notes of the interviews that he conducted but was not certain if he could locate them. Additionally, the Director said he did not preserve the video surveillance footage and did not prepare a written investigative report or other formal documents related to his investigation.

According to the District's narrative Student A and Student B were each disciplined with a one-day in-school suspension (ISS) for "verbal assaults and harassment."[2] However, the Director told OCR based on the interview he conducted with Student D, he and the Superintendent determined that Student B racially harassed Student A on April 30, 2021 by using a racial slur and that Student B received a one-day ISS for the harassment. The Director did not advise Student A or his parents of the results of his investigation. He told OCR that he thought the Superintendent would contact Student A's parents. The Director said he called Student B's father and told him that Student B had to serve a one-day ISS for racially harassing another student. The Principal told OCR it was his understanding that Student A and Student B each received a one-day ISS for their April 30, 2021 altercation and that Student B was not disciplined for using a racial slur.

---

[2] The Principal told OCR Student B served the one day ISS but due to an oversight by his office, Student A did not serve his suspension.

The Department of Education's mission is to promote student achievement and preparation for global competitiveness by fostering educational excellence and ensuring equal access.

www.ed.gov

Page 4

Student A advised OCR that he told Teacher A about other incidents of Student B using racial slurs. Teacher A told OCR that Student A did not report any racial slurs to her and said she would recall and take such a report very seriously. Teacher A told OCR that when a District staff member observes racial harassment, or receives a report of harassment, the staff member is required to notify the school administration by submitting a bullying and harassment reporting form.

The Principal and Teacher A told OCR that during the annual teacher's institute at the beginning of the school year, the school administrators go over the bullying and harassment reporting form with the staff. The District provided information and attendance logs on training that staff received on discrimination and harassment generally. However, administrators and staff do not receive training regarding the District's nondiscrimination and harassment policies and procedures.

The District's narrative stated that during the last five years it addressed six incidents of race-based discrimination at the high school and disciplined six students; however, it did not provide OCR any documents detailing the investigations that were conducted or discipline administered.

**Applicable Legal Standards**

The Title VI regulation, at 34 C.F.R. § 100.3, prohibits discrimination on the basis of race. The regulation implementing Title VI, at 34 C.F.R. § 100.3(a), states that no individual may be excluded from participation in, be denied the benefits of, or otherwise be subjected to discrimination on the basis of race, color or national origin under any program or activity that receives Federal financial assistance from the Department.

Racial harassment that creates a hostile environment is a form of discrimination prohibited by Title VI. Racial harassment can be verbal, nonverbal, or physical in nature. Racial harassment of a student creates a hostile environment if the conduct is so severe, persistent, or pervasive that it denies or limits a student's ability to participate in or benefit from the recipient's program or activities. If a racially hostile environment existed and the recipient had notice of the hostile environment, the recipient must respond adequately to address the hostile environment. The school is responsible for remedying the effects of the harassment on the student, as well as for ending the harassment and preventing its occurrence.

OCR considers the totality of the circumstances to determine whether a hostile environment has been created (i.e., whether the harassing conduct is sufficiently severe, persistent or pervasive that it interferes with or limits a student's ability to participate in or benefit from the school's program). These circumstances include the context, nature, scope, frequency, duration, and location of the harassing incidents, as well as the identity, number, and relationships of the persons involved. OCR considers the conduct in question from both an objective perspective and the subjective perspective of the alleged victim of harassment.

The Department of Education's mission is to promote student achievement and preparation for global competitiveness by fostering educational excellence and ensuring equal access.

www.ed.gov

**Exhibit A, Page 4 of 5**

Page 5

OCR enforces the requirements of Title VI consistent with the requirements of the First Amendment of the U.S. Constitution. The laws that OCR enforces protect students from discrimination but are not intended to restrict the exercise of protected speech in violation of the First Amendment.

**Conclusion and Resolution Agreement**

OCR determined that it is appropriate to resolve the complaint allegation because OCR has identified concerns that can be addressed through a resolution agreement. In particular, OCR has concerns that the District failed to appropriately investigate Student A's report that Student B used a racial slur toward Student A on April 30, 2021 and did not determine if there had been other incidences of alleged racial harassment of Student A. OCR also has concerns that the District has not provided training to staff and administrators on the District's nondiscrimination and harassment policies and procedures, has not trained administrators on conducting racial discrimination and harassment investigations pursuant to these policies and procedures, and failed to keep sufficient records for OCR to assess the District's compliance with Title VI.

The attached Resolution Agreement is fully aligned with the complaint allegation. It requires the District to:

- provide individual relief to Student A in the form of an offer of counseling if needed, or another suitable opportunity to discuss his experiences with racial harassment;

- train District staff on the District's nondiscrimination and harassment policies and on investigation techniques;

- provide training to students at Anna-Jonesboro Community High School on the District's nondiscrimination and harassment policies; and

- take steps to track and maintain data concerning incidents of racial harassment and discrimination involving District students sufficient to determine Title VI compliance.

The letter sets forth OCR's determination in an individual OCR case. This letter is not a formal statement of OCR policy and should not be relied upon, cited, or construed as such. OCR's formal policy statements are approved by a duly authorized OCR official and made available to the public.

This letter sets forth OCR's determination in an individual OCR case. This letter is not a formal statement of OCR policy and should not be relied upon, cited, or construed as such. OCR's formal policy statements are approved by a duly authorized OCR official and made available to the public.

OCR would like to make you aware that individuals who file complaints with OCR may have the right to file a private suit in federal court whether or not OCR finds a violation.

The Department of Education's mission is to promote student achievement and preparation for global competitiveness by fostering educational excellence and ensuring equal access.

www.ed.gov

**Exhibit A, Page 5 of 5**

## RESOLUTION AGREEMENT
### Anna-Jonesboro Community High School District
### OCR Complaint # 05-21-1298

The Anna-Jonesboro Community High School District (District) enters into this Resolution Agreement with the U.S. Department of Education, Office for Civil Rights (OCR), to resolve the above-referenced complaint. The District assures the OCR that it will take the following actions to comply with the requirements of Title VI of the Civil Rights Act of 1964 (Title VI), 42 U.S.C. § 2000d – 2000d-7, and its implementing regulations, at 34 C.F.R. Part 100, which prohibit discrimination on the bases of race, color or national origin in any education program or activity operated by a recipient of Federal financial assistance from the U.S. Department of Education. This Agreement does not constitute an admission of liability, non-compliance, or wrongdoing by the District.

### General Principles

The District will take the steps outlined below, and any other steps necessary as circumstances warrant, to ensure that students enrolled at Anna-Jonesboro Community High School are not subjected to harassment on the basis of race. The District will promptly investigate all incidents of harassment of students on the basis of race of which it knows or should have known, and take effective responsive action. The District will also take steps to end any race-based harassment, prevent its recurrence, and, where appropriate, take steps to remedy the effects of any race-based harassment on affected students and to discipline any individual(s) found to have engaged in the racially harassing behavior. The District will also take steps necessary to ensure that no individual is subjected to retaliation for reporting harassment based on race.

### Staff Training

1. By February 28, 2022, the District will provide all District administrators, faculty, and staff with effective annual training on the District's policies and procedures that address racial discrimination and harassment. The training will include the following components:

   a. The District will remind all personnel of its commitment to have a District environment free from racial discrimination and harassment, and will explain what they should do if they believe students have been subjected to discrimination or harassment based on race, including their duty to immediately report all allegations of possible discrimination or harassment to a District complaint manager. The training will also include notice that discrimination and harassment of students based on race will not be tolerated and that students who engaged in race discrimination and harassment will be disciplined.

**Exhibit B, Page 1 of 6**

Page 2

b. The District will provide a general overview of Title VI, including how the Title VI regulation's nondiscrimination provisions apply to students, the names and contact information for the District's designated employee(s) to whom students or others may report allegations of race discrimination and harassment, where to locate the District's discrimination and harassment policies and procedures on the District's website, and the existence of OCR and its authority to enforce Title VI.

c. The District will explain its nondiscrimination policies and procedures, including what constitutes race discrimination and harassment, the role of the District's complaint managers, and disciplinary sanctions related to findings of violations of the District's discrimination and harassment policies and procedures, including the District policy prohibiting retaliation and intimidation.

d. The District will distribute written materials that contain the information discussed.

**REPORTING REQUIREMENT:** By March 11, 2022, the District will provide OCR with documentation that it has provided the training referenced in this item, including the dates of the training, the names and titles of the trainer(s), a copy of any materials used or distributed during the training, and a list of District employees who attended the training.

2. By February 28, 2022, the District will provide effective training to all employees who are directly involved in processing, investigating and/or resolving complaints or other reports of discrimination or harassment on the basis of race, and any counselors or other District personnel who are likely to receive reports of race discrimination or harassment. The training will review the District's policies and procedures against race discrimination and harassment, and include instruction on how to investigate and respond to racial incidents in a timely and thorough manner, including the appropriate legal standards to apply in such investigations, the importance of evaluating the totality of the circumstances including previous acts of harassment and off-campus harassment that may have created a hostile environment on campus, and the need to take appropriate measures to assure that harassment does not continue during the investigation or recur thereafter. The training will also communicate the criteria to ascertain when a conflict between students may raise an issue of race discrimination or harassment.

**REPORTING REQUIREMENT:** By March 11, 2022, the District will provide OCR with documentation that it has provided the training referenced in this item, including the dates of the training, the names and titles of the trainer(s), a copy of any materials used or distributed during the training, and a list of District employees who successfully completed the training.

**Exhibit B, Page 2 of 6**

Page 3

3. By April 1, 2022, the District will assess the effectiveness of the training referenced in Items #1 and #2 by conducting surveys of the administrators, faculty, staff, and employees who attended the training(s). The surveys will specifically inquire about their knowledge and perceptions about their obligation to report all allegations of possible race discrimination or harassment to a complaint manager, and the process for doing so.

**REPORTING REQUIREMENT:** By April 15, 2022, the District will provide documentation to OCR of the results of the surveys and a description of any actions the District proposes to take in response, including conducting additional training sessions to ensure effective training is provided.

**Student Training**

4. By February 1, 2022, the District will provide an annual mandatory, age-appropriate orientation session for all students on the District's policies and procedures prohibiting race discrimination and harassment. The orientation will remind students of the District's commitment to have an environment free from discrimination and harassment, and will explain what students should do if they believe they or other students have been subjected to race discrimination or harassment. The training will also include a notice that discrimination or harassment of students based on race will not be tolerated, that students who discriminate or harass students based on race will be disciplined according to the Discipline Code.

**REPORTING REQUIREMENT:** By February 15, 2022, the District will provide OCR with documentation that it has provided the training referenced in this item, including the dates of the training, the names and titles of the trainer(s), a copy of any materials used or distributed during the training, and a list of District students who attended the training.

**Individual Relief**

5. Within 60 days of the execution of this agreement, the District will provide the Complainant with a written offer to provide Student A counseling and/or psychological support. If the offer is accepted, the District will provide all needed services by May 15, 2022, unless the timeframe is extended by mutual agreement between the District and the Complainant. In offering counseling and/or psychological support, the District may utilize District counseling department and staff.

**REPORTING REQUIREMENT:** By March 15, 2022, the District will provide OCR with a copy of the written offer of services sent to the Complainant and any relevant communications between the District and the Complainant. If the offer is

**Exhibit B, Page 3 of 6**

Page 4

accepted, the District will provide OCR the schedule of services that will be provided to Student A. By June 1, 2022, the District will provide OCR documentation of any counseling or psychological support provided to Student A.

**Maintenance of Data**

6. Effective immediately, the District agrees to maintain documents relating to verbal and written complaints or other reports of race discrimination or harassment of students to ensure that its files contain all information necessary to respond appropriately under Title VI. At a minimum, the District agrees to maintain documentation including the following:

   a. a copy of all written reports, and a narrative of all verbal reports, of incidents involving allegations of race discrimination or harassment;

   b. a copy of the complete investigative file including witness statements, notes and other documentary evidence of the District's investigation and findings;

   c. a copy of other written documentation the District provided to the parties informing them of the results of the investigation;

   d. a narrative of all actions taken by District personnel in response to the reports by District personnel, including any supporting documentation;

   e. a copy of any and all disciplinary sanctions issued to students or employees for violations of the District's race discrimination or harassment policies and procedures;

   f. documentation demonstrating any interim and/or remedial services offered and provided to the alleged injured party, the alleged harasser and/or witnesses of the incident(s), such as counseling or other appropriate support services; and,

   g. a narrative of all actions taken to stop the harassment or discrimination found to have occurred and to prevent recurrence of any incident(s), including any supporting documentation.

   **REPORTING REQUIREMENT:** By June 1, 2022, the District will provide to OCR copies of the documentation referenced in Item #6 for the 2020-21 and 2021-22 school year.

The District understands that by signing this Agreement, it agrees to provide data and other information in a timely manner in accordance with the reporting requirements of this Agreement. Further, the District understands that during the monitoring of this

**Exhibit B, Page 4 of 6**

Page 5

agreement, if necessary, OCR may visit the District, interview staff and students, and request such additional reports or data as are necessary for OCR to determine whether the District has fulfilled the terms of this Agreement. Upon the District's satisfaction of the commitments made under this Agreement, OCR will close this case.

The District understands and acknowledges that OCR may initiate administrative enforcement or judicial proceedings to enforce the specific terms and obligations of this Agreement. Before initiating administrative enforcement (34 C.F.R. §§ 100.9, 100.10), or judicial proceedings to enforce this Agreement, OCR shall give the District written notice of the alleged breach and sixty (60) calendar days to cure the alleged breach.

This Agreement will become effective immediately upon the signature of the District's representative below.

_____
For the District

_12-17-2021_
Date

Page 6

It is important for you to understand that the laws OCR enforces also prohibit the District from harassing, coercing, intimidating, or discriminating against you because you filed a complaint or participated in the complaint resolution process. If this happens, you may file a complaint against the District with OCR.

Under the Freedom of Information Act, it may be necessary to release this document and related correspondence and records upon request. In the event that OCR receives such a request, we will seek to protect, to the extent provided by law, personally identifiable information, which, if released, could reasonably be expected to constitute an unwarranted invasion of privacy.

If you have any questions or need assistance, you may contact Shawn Peters, Attorney, at 312-730-1508 or shawn.peters@ed.gov.

Sincerely,

*for*
Dawn R. Matthias
Team Leader

Enclosure

The Department of Education's mission is to promote student achievement and preparation for global competitiveness by fostering educational excellence and ensuring equal access.

www.ed.gov

**Exhibit B, Page 6 of 6**



Superintendent's
Office
(618) 833-8421

Fax
(618) 833-4239

Principal's
Office
(618) 833-8502

Fax
(618) 833-5931

# ANNA-JONESBORO COMMUNITY HIGH SCHOOL

608 S. MAIN ST.                                    ANNA, ILLINOIS 62906

## NOTICE OF BAR

May 17, 2021

***Via Regular and Certified Mail Return Receipt Requested***

Roger Cannon
2685 Old Hwy. 51 N
Cobden, IL 62920

Dear Mr. Cannon:

You are hereby notified that at a meeting of the Board of Education of Anna-Jonesboro Community High School No. 81 ("Board"), held on May 17, 2021, a resolution was duly adopted by a majority of the Board of Education to bar you from entering onto all Anna-Jonesboro Community High School No. 81 property and attending all Anna-Jonesboro Community High School No. 81 events, whether home or away, without the prior written permission of the Superintendent, for a period of one (1) year from May 17, 2021, through and including May 16, 2022.

This bar letter applies to all School District property, including any location used for any school district business and any location in which an athletic and/or extracurricular events are conducted, whether home or away.

This bar letter is being imposed because it was determined that you engaged in the following conduct:

On Thursday May 6, 2021, you engaged in the following offensive, aggressive, threatening, and disruptive conduct:

1.    You used vulgar or obscene language in violation of Board Policy 8:30. During a phone call with Superintendent Rob Wright you used excessive profanity

**A-J** *A place where students and faculty experience the joy of learning by promoting high expectations and nurturing human worth through a relevant, innovative curriculum and an actively involved community.*

**Exhibit C, Page 1 of 3**

numerous times. Mr. Wright called you to notify you of disciplinary measures against your son. On the phone, you became combative and used excessive profanity. You abruptly stated that you were coming to the District office. When you arrived at the District, you entered Mr. Wright's office and the conversation quickly became heated. You continued to use excessive profanity and yell. You used obscene and vulgar language and your behavior was aggressive, intimidating, and belligerent. Your conduct violated Board Policy 8:30.

2.    You engaged in violent, aggressive, and threatening behavior toward Superintendent Rob Wright in violation of Board Policy 8:30. During a phone call with Superintendent Rob Wright, you were combative and aggressive. In Mr. Wright's office, you were belligerent, loud, uncooperative, and abusive towards staff. You were very combative and stated that by the time you were done, Mr. Wright and Mr. Detering would be fired and hell and fire would reign down on the District. You continued to yell at Mr. Wright and use excessive profanity. Mr. Wright directed you to leave the premises due to your behavior. You refused to leave after multiple requests by Mr. Wright. As a result, Officer Jason Leek arrived to escort you out of the building. You then argued with Officer Leek. You continued to refuse to leave the premises. You asked Officer Leek what would happen if you did not leave. Officer Leek responded and asked if you wanted to escalate the situation in that way. You refused to leave until you were threatened with arrest. You then began to leave the office while continually arguing and stating what you would do. While leaving, you told Mr. Wright to get that smirk off his face or you would knock it off of him. This constitutes a direct threat of physical violence towards Mr. Wright. You were belligerent, loud, uncooperative, and abusive towards staff. Your behavior constitutes a threat to a District staff member in violation of Board Policy 8:30. Your conduct was violent and aggressive and disrupted the District's operations. Your conduct violated Board Policy 8:30.

3.    You engaged in violent, aggressive, and threatening behavior toward Officer Jason Leek in violation of Board Policy 8:30. Specifically, Mr. Wright asked you to leave his office multiple times, which you refused. As a result, Officer Leek arrived to escort you out of the building. You argued with Officer Leek and continued to be adamant that you did not have to leave because it was a public building. You continued to refuse to leave the premises and asked Officer Leek what would happen if you did not leave. Officer Leek responded and asked if you wanted to escalate the situation in that way. You refused to leave until you were threatened with arrest. You then began to leave the office while continually arguing and stating what you would do. While leaving the office, you made a threat towards Mr. Wright. You remained in the District parking lot for approximately 15-20 more minutes arguing with police. Officer Leek had to call for back up due to your aggressive behavior and refusal to leave the premises. Your conduct violated Board Policy 8:30.

**Exhibit C, Page 2 of 3**

Your behavior was aggressive, threatening, intimidating, and completely inappropriate. You repeatedly engaged in threatening, harassing, and intimidating behavior towards a staff member. You also used vulgar and obscene language. Your actions resulted in school staff experiencing fear for their own safety, the safety of students at school and has caused emotional distress for school personnel. Your conduct and behavior violated Board Policy 8:30 and was substantially disruptive to the school environment and jeopardized the safety and welfare of staff. As a result of the sequence of events, the Police Department has been given all information regarding the events that took place on the District property.

If you enter upon Anna-Jonesboro Community High School No. 81 property or a school-sponsored event in violation of this directive, we will immediately contact law enforcement officials to remove you and we will file criminal trespass charges against you.

Board of Education of
Anna-Jonesboro Community High School
No. 81
County of Union
State of Illinois

By: _____
President, Board of Education

cc:    Rob Wright, Superintendent
       Police Department

**Exhibit C, Page 3 of 3**