IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| ROGER CANNON and<br>MISTI CANNON, individually and as<br>Next Friend of R.C., a minor,<br><br>       Plaintiffs,<br><br>v.<br><br>THE CITY OF ANNA, ILLINOIS,<br>ANNA POLICE DEPARTMENT,<br>ANNA-JONESBORO COMMUNITY HIGH<br>SCHOOL DISTRICT #81,<br>BRETT DETERING, ROB WRIGHT,<br>SCOTT FINDERS, CODY HAND,<br>CALEB CLOVER, TIM SMITH,<br>BRENTLEY SIMS, and<br>RODGER GOINES,[1]<br><br>       Defendants. | Case No. 3:22-CV-981-NJR |

## MEMORANDUM AND ORDER

**ROSENSTENGEL, Chief Judge:**

Plaintiffs Misti Cannon, individually and as Next Friend of R.C., and Roger Cannon bring this action pursuant to 42 U.S.C. § 1983 for alleged deprivations of their constitutional rights. (Doc. 59). Defendants each move to dismiss Plaintiffs' Amended Complaint for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). (Docs. 64, 65, 69). Certain Defendants also move to strike a portion of the Amended Complaint pursuant to Rule 12(f). (Doc. 67). For the reasons set forth below, the motions are granted in part and denied in part.

### BACKGROUND

The following facts are reflected in Plaintiffs' Amended Complaint (Doc. 59), and the Court accepts them as true when considering Defendants' motions to dismiss.

---

[1] The Clerk of Court is **DIRECTED** to correct the spelling of Rodger Goines's name on the docket.

Roger and Misti Cannon have been married for 12 years and are residents of Union County, Illinois. (Doc. 59 at ¶¶ 2-3). Roger Cannon's minor son, R.C., is biracial; his biological mother is African American, and Roger Cannon is Caucasian. (*Id.* at ¶ 2). Misti Cannon, R.C.'s custodial stepmother, is also Caucasian. (*Id.* at ¶ 20).

R.C. attends Anna-Jonesboro Community High School ("the High School"), which is part of the Anna-Jonesboro Community High School District #81 ("the District") and located in the City of Anna, Illinois. (*Id.* at ¶¶ 3, 5). R.C.'s girlfriend is M.P. (*Id.* at ¶ 16). R.C.'s ex-girlfriend, H.L., is now dating B.L., who is biracial like R.C. (*Id.*). M.P. and H.L. are Caucasian.

Around March 2021, B.L. began to harass R.C. by calling him the n-word. (*Id.* at ¶ 21). R.C. complained to several teachers at the High School about the harassment, but none took any action. (*Id.* at ¶ 22). R.C. then complained to Principal Brett Detering and Vice Principal Scott Finders, who referred the matter to Superintendent Rob Wright. (*Id.* at ¶ 23). Principal Detering held a meeting with R.C. on May 4, 2021, and implied it was not racial harassment for B.L. to call R.C. the n-word because they were both biracial. (*Id.* at ¶ 24). R.C. recorded the conversation on his cell phone, during which Detering said the following:

> [F]irst of all, I don't like, there's no place for the n-word to be used period. And that goes for, in my opinion, even people that are of color, I don't think should use it because I think it sends the wrong message. You know what I'm saying? That it's OK for that word to be used at all, and it's not, you know? And, I know there was a thing that at one point about well, did a person say it with an "ER" ending or an "A" ending? I don't, to me, it doesn't matter. You know what I'm saying? It still, it still the same thing, and I don't think anybody should use that word regardless, you know? And I know that sometimes there are people that will use that, you know, I've seen, African American people use that word talking with each other and I just wish that that was a word that we were just able to just cross out from our vocabularies because it's hard to distinguish when one person uses a certain word, is it meant as a, how is it meant? You know what I'm saying? And, obviously, with you and, and B.L., both of you being of mixed race, you know, there's not a racial thing to it, you know what I'm saying, as much it is, just this, it's just a word that just can't be used."

(*Id.*)

After the meeting, Wright and Finders called R.C. to the office, took him to a small room, and locked the door. (*Id.* at ¶ 25). Wright and Finders stood over R.C. and threatened him by stating that they were going to call the police, have R.C. arrested, and taken to jail. (*Id.* at ¶ 26). R.C., who was in tears and extremely frightened, asked for permission to call his parents. (*Id.* at ¶ 27). Wright and Finders denied R.C. permission to contact his parents and took R.C.'s cell phone. (*Id.* at ¶¶ 27-28). They tried to delete the recording of the conversation between R.C. and Detering, but R.C. refused to give them the passcode to his phone. (*Id.* at ¶ 29). They then kept R.C.'s cell phone and instructed R.C. to leave the office. (*Id.* at ¶ 30). The phone was not returned to him until the end of the day. (*Id.*).

Wright later called Roger Cannon and said he planned to suspend R.C. for recording his conversation with Detering. (*Id.* at ¶ 31). Roger said R.C. recorded the conversation because he was afraid. (*Id.*). Subsequently, in a meeting at the High School, Wright advised Roger that he was suspending R.C. for recording the conversation. (*Id.* at ¶ 32). Roger objected, but Wright said he did not care if R.C. had been afraid. Further, if R.C. used the recording in any way against Detering, there would be consequences. (*Id.*). When Roger further protested the suspension, Wright said that R.C. had no rights while in school, that he was going to be suspended, and there wasn't a "damn thing" Roger could do about it. (*Id.* at ¶ 33). Roger objected but did not threaten to hit Wright or any other school official. (*Id.*).

The next day, Roger asked that R.C.'s threatened suspension be put on the agenda of the school board meeting. (*Id.* at ¶ 34). However, Roger was not permitted to speak at the meeting. (*Id.* at ¶ 35). On May 17, 2021, the Board of Education sent Roger a Notice of Bar letter, barring him from entering the High School grounds and from attending any High School events, home or away, without prior written permission of Superintendent Wright, for a period of one year. (*Id.* at ¶ 38; Doc. 59-3).

The Notice of Bar states that Roger used vulgar and obscene language during his phone call with Wright.[2] (Doc. 59-3). Roger then abruptly stated he was coming to the District's office. (*Id.*). Once there, Roger entered Wright's office and engaged in violent, aggressive, and threatening behavior. (*Id.*). He was belligerent, uncooperative, and abusive toward staff, and he told Wright that "by the time [he] was done, Mr. Wright and Mr. Detering would be fired and all hell and fire would reign down on the District." (*Id.*). Roger refused to leave after multiple requests, so he had to be escorted from the premises by a police officer. (*Id.*). He then argued with the officer and refused to leave until he was threatened with arrest. (*Id.*). The officer had to call for back up, as Roger remained in the parking lot for another 15 to 20 minutes, arguing with the officers. (*Id.*). As a result of Roger's actions, District staff feared for their safety and the safety of students at school. (*Id.*). Finally, the Notice states that the Police Department had been given all information regarding the events, and that if Roger enters High School property or a school-sponsored event, the District would immediately contact law enforcement to remove him, and criminal trespass charges would be filed. (*Id.*). Roger asserts these allegations are not true and that the Notice of Bar was issued in retaliation for his complaints about the harassment R.C. endured. (Doc. 59 at ¶ 39-40).

Roger then filed a complaint with the United States Department of Education, Office of Civil Rights ("OCR") on June 22, 2021. (*Id.* at ¶ 36).

On September 24, 2021, the night of the homecoming football game, a physical fight erupted between H.L. (R.C.'s ex-girlfriend) and M.P. (R.C.'s current girlfriend). (Doc. 59 at ¶ 41). H.L shoved M.P., and M.P. struck H.L in the face with her fist. (*Id.*). R.C. was about 100 feet away from the girls at the time of the fight and was walking back to his truck. (*Id.*). R.C. attempted to

---

[2] On a motion under Rule 12(b)(6), the Court can consider the complaint, as well as documents attached to the complaint, documents that are critical to the complaint and referred to in it, and information that is subject to proper judicial notice. *Geinosky v. City of Chicago*, 675 F.3d 743, 745 (7th Cir. 2012).

leave the parking lot in his truck with M.P. in the passenger seat, but H.L.'s mother stood in front of the truck to prevent R.C. from leaving. (*Id.* at ¶ 42).

Tim Smith, an off-duty officer with the Anna Police Department, and Rodger Goines, an off-duty Illinois State Trooper, were attending the homecoming game and had consumed alcoholic beverages. (*Id.* at ¶ 43). They were not in uniform, and R.C. did not know they were police officers. (*Id.*). Officer Smith and Trooper Goines ordered R.C. to get out of his truck without announcing they were officers. (*Id.*). R.C. refused, so they yelled to "get your black ass out of the truck." (*Id.* at ¶ 44). Officer Smith then grabbed R.C. by the back of his neck while Trooper Goines grabbed his lower body. (*Id.* at ¶ 43). The officers yanked R.C. from the truck and threw him on the ground, holding him there until other officers arrived. (*Id.* at ¶ 43). Anna Police Department Officer Caleb Clover arrived and searched and handcuffed R.C. (*Id.*). R.C. remained handcuffed and detained for nearly two hours, but he was not charged with a crime. (*Id.* at ¶ 45).

While R.C. was being accosted by Officer Smith and Trooper Goines, M.P. used R.C.'s cell phone to call Roger and Misti Cannon. (*Id.* at ¶ 46). Roger could hear R.C. yelling as he was being thrown to the ground by Officer Smith and Trooper Goines. (*Id.*). Roger and Misti drove to the High School, where they were arrested. Misti was arrested and detained for more than an hour by Trooper Goines, Officers Smith and Clover, and Anna Police Department Officer Cody Hand. (*Id.* at ¶ 49). Roger was arrested by Officers Hand and Clover, who handcuffed him with his hands behind his back, causing an acromioclavicular separation ("AC joint separation") in his right shoulder. (*Id.* at ¶ 50). Prior to being handcuffed, Roger advised Officers Hand and Clover that he could not put his hands behind his back because of a previous surgery on his shoulder. (*Id.* at ¶ 51). Nevertheless, the officers forced Roger's hands behind his back, causing the AC joint separation. (*Id.*). Roger later obtained medical treatment for his AC separation and was required to keep his arm in a sling for an extended period of time. (*Id.* at ¶ 52).

While Roger was being arrested, three officers from other jurisdictions all advised Officers Hand and Clover that they could not arrest Roger for appearing on public property at a public event without an order signed by a judge, stating that Officers Hand and Clover were violating Roger and Misti's rights to be on public property. (*Id.* at ¶ 54).

As a result of the incident, Roger Cannon was charged with criminal trespass to real property, a Class B misdemeanor, for entering the High School grounds in violation of the Notice of Bar. (*Id.* at ¶ 53).

On December 15, 2021, the OCR issued its report related to Roger's complaint with the Department of Education. (*Id.* at ¶ 36). The report outlines the Department of Education's "concerns that the District failed to appropriately investigate Student A's report that Student B used a racial slur towards Student A…and did not determine if there had been other incidences of alleged racial harassment to Student A." (Doc. 59-1). The OCR further stated "they had concerns that the District has not provided training to staff and administrators on the District's nondiscrimination and harassment policies and procedures, has not trained administrators on conducting racial discrimination and harassment investigations…and failed to keep sufficient records for OCR to assess the District's compliance. (*Id.*; Doc. 59 at ¶ 77). The OCR and the District then entered into a Resolution Agreement, in which the District agreed to, among other things, ensure students at the High School are not subjected to harassment on the basis of race, properly investigate incidents of racial harassment, and provide staff and student training on the District's policies and procedures regarding racial discrimination and harassment. (Doc. 59-2).

On May 9, 2022, Plaintiffs filed a lawsuit under 42 U.S.C. § 1983 against the City of Anna, Illinois, the Anna Police Department, Anna-Jonesboro Community High School District #81, Principal Brett Detering, Superintendent Rob Wright, Vice Principal Scott Finders, Officer Cody Hand, Officer Caleb Clover, Officer Tim Smith, Officer Brentley Sims, and Trooper Rodger

Goines. (Doc. 1). They subsequently filed an Amended Complaint on July 12, 2022. (Doc. 59). Roger and Misti, individually and as Next Friend of R.C., seek damages for their loss of freedom of movement, extreme mental and emotional distress and anguish, and humiliation. They also seek attorneys' fees and an award of punitive damages against each individual Defendant.

The Amended Complaint asserts a total of 16 counts alleging Defendants deprived Plaintiffs of their civil rights in violation of 42 U.S.C. § 1983. In the first 14 counts, Plaintiffs assert Defendants either acted in concert or pursuant to a conspiracy. In Counts 1 through 4, Plaintiffs allege Wright, Detering, Finders, Smith, and Goines discriminated and retaliated against R.C. in violation of R.C.'s Equal Protection rights. In Counts 5 through 8, Plaintiffs allege Hand, Clover, Smith, Sims, and Goines violated R.C. and Misti Cannon's Fourth and Fourteenth Amendment rights when they falsely arrested Plaintiffs. In Counts 9 and 10, Plaintiffs allege Wright, Detering, Finders, Hand, and Clover violated Roger Cannon's Due Process rights under the First and Fourteenth Amendments, and in Counts 11 and 12, they allege these Defendants violated Roger's free speech rights under the First and Fourteenth Amendments. In Counts 13 and 14, Plaintiffs claim Hand and Clover used excessive force in violation Roger Cannon's Fourth and Fourteenth Amendment rights. Finally, in Counts 15 and 16, Plaintiffs allege a violation of their Fourth and Fourteenth Amendment rights against the City of Anna, Illinois, the Anna Police Department, and the Anna-Jonesboro Community High School District #81.

Defendants now move to dismiss the claims against them for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). (Docs. 64, 65, 69). The District, Detering, Wright, and Finders (the "School Defendants") also move to strike paragraph 24 of the Amended Complaint. (Doc. 67).

DISCUSSION

## I.     Motion to Strike

The Court first addresses the School Defendants' Motion to Strike paragraph 24 of the Amended Complaint. (Doc. 67). Federal Rule of Civil Procedure 12(f) provides that "the court may order stricken from any pleading any insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." FED. R. CIV. P. 12(f). "Rule 12(f) motions are generally viewed with disfavor because striking a portion of a pleading is a drastic remedy and because it is often sought by the movant simply as a dilatory tactic." *Riemer v. Chase Bank, N.A.*, 275 F.R.D. 492, 494 (N.D. Ill. 2011) (quotation omitted). Further, a motion to strike is not a tool for deciding disputed issues of law or fact, especially where no discovery has been taken and the legal basis for the motion to strike depends on facts yet to be uncovered. *See id.*

In this case, paragraph 24 of the Amended Complaint contains the transcript of the recorded conversation between R.C. and Principal Detering. The School Defendants argue that recording a conversation without consent by the other party amounts to eavesdropping under the Illinois Criminal Code, 720 ILCS § 5/14-2. Because R.C. did not have permission to record the conversation, and thus it was recorded in violation of the Illinois Criminal Code, the transcript contained in paragraph 24 should be stricken.

In response, Plaintiffs argue that Defendants have not cited any case law supporting their motion to strike. But even the cases relied on by Plaintiffs are inapplicable or no longer good law. Plaintiffs assert that there can be no invasion of an "expectation of privacy" when a party to a conversation makes a recording of that conversation. Thus, it was not illegal for R.C. to record his conversation with Detering because Detering had no expectation of privacy. Plaintiffs cite to *Thomas v. Pearl*, 793 F.Supp. 838, 842 (C.D. Ill. 1992), *aff'd*, 998 F.2d 447 (7th Cir. 1993); *People v. Rodriguez*, 680 N.E.2d 757, 768 (Ill. App. Ct. 1997); and *People v. Harrington*, 645 N.E.2d 957, 958-

59 (Ill. 1994). These cases, in turn, rely on *People v. Beardsley*, 503 N.E.2d 346, 350 (Ill. 1986), which has been superseded by statute. Thus, neither party cites to useful case law interpreting Illinois's eavesdropping law.

Under current Illinois law, a party to a private conversation must have consent of all other parties before recording the conversation. 720 ILCS 5/14-2(a)(2). The failure to obtain consent before recording the conversation constitutes eavesdropping. *Id.*; *People v. Leannah*, 2022 IL App (2d) 200672-U, ¶ 28, 2022 WL 1469345, *3 (citing 720 ILCS 5/14-2(a)(2)). Prior to 2014, the law prohibited a person from knowingly and intentionally recording *any* conversation between two or more people without the consent of all parties to the conversation. *Leannah*, 22 WL 1469345, *3. In 2014, the statute was amended to apply to communications only in which one or more parties is "reasonably justified in expecting the conversation to be private." *Id.*

Here, even if the Court assumes Detering was reasonably justified in expecting his conversation with R.C. to be private, there are a multitude of exemptions to Illinois's eavesdropping law. *See* 720 ILCS 5/14-3. At this stage, it is unknown whether any of those exemptions will apply. Moreover, Defendants have cited no cases indicating that the recording, allegedly taken in violation of Illinois law, is inadmissible as evidence in a civil case pending in federal court. For these reasons, the School Defendants' Motion to Strike (Doc. 67) is denied.

## II. Motions to Dismiss

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) "tests whether the complaint states a claim on which relief may be granted." *Richards v. Mitcheff*, 696 F.3d 635, 637 (7th Cir. 2012). To survive a Rule 12(b)(6) motion, the plaintiff only needs to allege enough facts to state a claim for relief that is plausible on its face. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A plaintiff need not plead detailed factual allegations, but must provide "more than labels and conclusions, and a formulaic recitation of the elements." *Id.*

In deciding a motion to dismiss under Rule 12(b)(6), a court accepts as true all well-pleaded facts in the complaint and draws all reasonable inferences in the plaintiff's favor. *Burke v. 401 N. Wabash Venture, LLC,* 714 F.3d 501, 504 (7th Cir. 2013). Taken together, the factual allegations contained within a complaint must "raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Twombly,* 550 U.S. at 555 (internal citations omitted).

### A. Trooper Rodger Goines

Trooper Goines moves to dismiss the claims against him in Counts 1 through 8 of the Amended Complaint for failure to state a claim, arguing that Plaintiffs have failed to allege facts establishing he was acting under color of state law.

A law enforcement officer can be held individually liable under § 1983 if the officer deprives the plaintiff of a Constitutional right while acting "under color of state law." *DiDonato v. Panatera*, 24 F.4th 1156, 1159 (7th Cir. 2022); *Wilson v. Price*, 624 F.3d 389, 392 (7th Cir. 2010). An action is taken under the color of state law when it involves "a misuse of power, possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law." *Id.*; *Barnes v. City of Centralia, Illinois*, 943 F.3d 826, 831 (7th Cir. 2019)). "To plead that a defendant acted under color of state law, a § 1983 plaintiff must allege that a defendant's invocation of state authority in one way or another facilitated or enabled the alleged misconduct." *DiDonato*, 24 F.4th at 1161.

"There is no set formula in determining whether a police officer has acted under the color of state law." *Doe v. City of Chicago*, No. 19 C 7375, 2020 WL 1675639, at *1 (N.D. Ill. Apr. 6, 2020) (citing *Harnishfeger v. United States*, 943 F.3d 1105, 1119 (7th Cir. 2019)). Instead, a court must look to the nature of the specific acts performed. *Latuszkin v. City of Chicago*, 250 F.3d 502, 505 (7th Cir. 2001); *see also Pickrel v. City of Springfield, Ill.*, 45 F.3d 1115, 1118 (7th Cir. 1995) ("Deciding whether

a police officer acted under color of state law should turn largely on the nature of the specific acts the police officer performed, rather than on merely whether he was actively assigned at the moment to the performance of police duties."). Several factors considered by courts include whether the officer pretends to act under color of state law, whether his pretense of acting in the performance of his duties influenced others' behavior, and the harm inflicted on the plaintiff related to the police officer's status. *Jones-Huff v. Hill*, 208 F.Supp.3d 912, 919–20 (N.D. Ill. 2016).

In this case, Plaintiffs allege Trooper Goines was off duty, not in uniform, and attending the homecoming football game on September 24, 2021. (Doc. 59 at ¶ 43). As R.C. attempted to leave the parking lot after the altercation between H.L. and M.P., Officer Smith and Trooper Goines ordered R.C. to vacate the pick-up truck. (*Id.* at ¶¶ 42-43). Trooper Goines did not announce himself as a police officer. (*Id.* at ¶ 43). When R.C. refused to get out of the truck, Trooper Goines said "get your black ass out of the truck," grabbed R.C.'s lower body, yanked him out of the truck, and threw him on the ground. (*Id.*). Trooper Goines then picked R.C. up and held him until other officers arrived. (*Id.*). Trooper Goines also kept the keys to the truck until R.C. was released. (*Id.* at ¶ 44). When Roger and Misti Cannon arrived at the scene, Misti Cannon was arrested and detained for more than an hour by Trooper Goines along with Officers Hand, Clover, and Smith. (*Id.* at ¶ 49).

Trooper Goines does not deny these allegations or argue that they are insufficient to establish he was acting under color of state law. Instead, he relies on an affidavit he prepared and attached to his motion to dismiss. Under Rule 12(b)(6), however, the Court cannot consider documents outside the pleadings without converting the motion into one for summary judgment under Rule 56. Neither party has requested that the Court convert the motion to dismiss to a motion for summary judgment, and Plaintiffs have not filed any evidence to rebut Goines's

affidavit. Thus, the Court will not convert the motion to one for summary judgment and will not consider Trooper Goines's affidavit.

Construing Plaintiffs' factual allegations as true and drawing all reasonable inferences in their favor, the Court finds that Plaintiffs have sufficiently alleged that Trooper Goines was acting under color of state law. Trooper Goines demanded that R.C. get out of his vehicle, physically pulled R.C. out of the truck, held him until other officers arrived, kept his truck keys, and arrested and detained Misti when she arrived on school grounds. This alleged display of police power is enough, at this stage, for Plaintiffs to state a claim that Trooper Goines was acting under color of state law.

### B. Concerted Action Claims

All Defendants have moved to dismiss Counts 1, 3, 5, 7, 9, 11, and 13 because there is no independent civil rights cause of action for acting "in concert." While the state of Illinois recognizes the tort of concerted activity, here, Plaintiffs bring only federal constitutional claims under § 1983. And under § 1983, a claim for civil conspiracy is the proper avenue for alleging concerted action.

In response, Plaintiffs argue that the doctrine of concerted action is often used to determine whether private parties can be held jointly liable with public officials in a § 1983 action. They further assert that while a conspiracy requires a preconceived plan agreed upon by the conspirators to accomplish a common goal, concerted action only requires willful participation in a joint activity. Plaintiffs reason that if a private party can act in concert with a state actor, but not pursuant to a conspiracy, then two state actors can also be found liable for acting in concert, but not pursuant to a conspiracy.

"The purpose of § 1983 is to deter state actors, and private individuals in collaboration with state officials, from using a 'badge of authority' to deprive individuals of rights guaranteed

by the Constitution." *Fries v. Helsper*, 146 F.3d 452, 457 (7th Cir. 1998). For a private individual to act under color of law, there must be "evidence of a *concerted effort* between a state actor and that individual." *Spiegel v. McClintic*, 916 F.3d 611, 616 (7th Cir. 2019) (quoting *Fries*, 146 F.3d at 457). The Seventh Circuit refers to this as "the 'conspiracy theory' of § 1983 liability." *Id.* A civil conspiracy is "a combination of two or more persons acting in concert to commit an unlawful act, or to commit a lawful act by unlawful means." *Beaman v. Freesmeyer*, 776 F.3d 500, 510 (7th Cir. 2015) (quoting *Scherer v. Balkema*, 840 F.2d 437, 441 (7th Cir. 1988)); *see also Sroga v. Weiglen*, No. 08C1789, 2008 WL 4831693, at *2 (N.D. Ill. Nov. 3, 2008) ("The charge of conspiracy in a civil action is merely the string whereby the plaintiff seeks to tie together those who, *acting in concert*, may be held responsible for any overt act or acts.") (emphasis added and citation omitted).

In other words, concerted action is an element of a conspiracy claim—not a standalone action. And because Plaintiffs have alleged the exact same facts in their conspiracy claims, their "in concert" claims are redundant. Accordingly, the Court dismisses Counts 1, 3, 5, 7, 9, 11, and 13 because there is no independent cause of action for acting "in concert" under federal law.

### C. Count 2: Conspiracy to Discriminate in Violation of R.C.'s Equal Protection Rights

In Count 2, Plaintiffs allege Superintendent Wright, Principal Detering, Vice Principal Finders, Officer Smith, and Trooper Goines conspired to discriminate against R.C. on the basis of his race in violation of his Equal Protection rights under the Fourteenth Amendment. (Doc. 59). Each Defendant moves to dismiss Count 2 for failure to state a conspiracy claim. Defendants argue that, while Plaintiffs invoke the term "conspiracy" numerous times, their factual allegations of a conspiracy are lacking. Specifically, Wright, Detering, and Finders assert there are no facts connecting their alleged acts in March and May 2021 with the alleged unconstitutional detainment of R.C. by Officer Smith and Trooper Goines on September 24, 2021. Trooper Goines also argues that the Amended Complaint contains no allegations that he reached an

understanding with state officials to deprive Plaintiffs of their constitutional rights. Officer Smith likewise argues there are no allegations of an agreement between any of the parties to take punitive action against R.C.

In response, Plaintiffs argue that they have alleged a culture of racial discrimination in the City of Anna, its Police Department, the High School, and among the individual Defendants. Furthermore, all Defendants acted pursuant to a preconceived plan to (1) enforce the unconstitutional ban prohibiting Roger Cannon from entering all District property; (2) arrest or detain Roger and Misti if they appeared on High School grounds; and (3) arrest or detain R.C. any time someone complained about R.C. because he is biracial and because he had dated two Caucasian girls. (Doc. 59 at ¶ 58).

As discussed above, a civil conspiracy is "a combination of two or more persons acting in concert to commit an unlawful act, or to commit a lawful act by unlawful means." *Beaman*, 776 F.3d at 510. To support conspiracy liability under § 1983, a plaintiff must allege (1) the defendants reached an agreement to deprive him of his constitutional rights, and (2) a member of the conspiracy took an overt act to deprive him of those rights. *Fulton v. Bartik*, 547 F. Supp. 3d 799, 817 (N.D. Ill. 2021) (citing *Daugherty v. Page*, 906 F.3d 606, 612 (7th Cir. 2018)). To survive a motion to dismiss, a plaintiff must set forth specific facts alleging the parties involved, the time period, and the general purpose of the conspiracy. *Id*. (citing *Loubser v. Thacker*, 440 F.3d 439, 443 (7th Cir. 2006)).

In *Geinosky v. City of Chicago*, the Seventh Circuit explained that, under *Twombly*, a plaintiff need only allege a plausible account of a conspiracy. *Geinosky v. City of Chicago*, 675 F.3d 743, 749 (7th Cir. 2012). While the plaintiff in that case made only conclusory allegations of conspiracy, he also alleged a pattern of harassment by several officers over a period of months. *Id.* Applying its "judicial experience and common sense," the court found that "[i]f several members of the same

police unit allegedly acted in the same inexplicable way against a plaintiff on many different occasions, we will not dismiss a complaint for failure to recite language explicitly linking these factual details to their obvious suggestion of collusion." *Id.* The *Geinosky* court also distinguished the facts alleged in that case from those alleged in *Redd v. Nolan*, where the plaintiff pleaded facts indicating only one defendant interfered with her employment relationship, leading to her termination. *Redd v. Nolan*, 663 F.3d 287, 292 (7th Cir. 2011). The plaintiff tried to bring a second defendant into the mix by claiming that he conspired with the first defendant to intentionally interfere with her employment. *Id.* The court affirmed the dismissal of the plaintiff's conspiracy claim, noting that the complaint contained "not a whiff of a conspiratorial agreement or any improper complicity" to support the conclusory allegation. *Id.*

The Court finds this case more akin to *Redd* than *Geinosky*. Plaintiffs have alleged two incidents separated by a span of six months. In March 2021, Wright, Detering, and Finders were involved with R.C.'s complaints of racial harassment and allegedly took no action to address the harassment. Months later, on September 24, 2021, City of Anna Police Officer Smith and Illinois State Trooper Roger Goines pulled R.C. out of his truck to stop him from leaving the scene of a fight on school grounds. While Plaintiffs allege Defendants were acting pursuant to a "preconceived plan," there are no factual allegations to support Plaintiffs' claim that these Defendants reached any agreement to discriminate against R.C. in violation of his Equal Protection rights. A blanket claim that there is a culture of racial discrimination in the Police Department, the High School, and among the individual Defendants is insufficient to support a conspiracy claim. Accordingly, Count 2 will be dismissed.

**D. Count 4: Conspiracy to Retaliate in Violation of R.C.'s Equal Protection Rights**

In Count 4, Plaintiffs allege Wright, Detering, Finders, Officer Smith, and Trooper Goines conspired to retaliate against R.C. on the basis of his race in violation of his Equal Protection

rights. (Doc. 59). Wright, Detering, and Finders move to dismiss this claim because the Seventh Circuit does not recognize claims of retaliation brought under the Equal Protection Clause.

In response, Plaintiffs argue that, even if this claim cannot properly be raised under the Equal Protection Clause, the facts alleged in the Amended Complaint also establish a claim of retaliation under the First Amendment. Plaintiffs point to their allegation that, after R.C. complained about B.L.'s racial harassment, Wright, Detering, and Finders failed to take any action to remedy the situation, "after which Officer Smith and Trooper Goines pulled R.C. from his pick-up truck on September 24, 2021, and slammed him to the ground, while yelling "get your black ass out of the truck."

The Court agrees that "the right to be free from retaliation may be vindicated under the First Amendment or Title VII, but not the equal protection clause." *Robertson v. Dep't of Health Servs.*, 949 F.3d 371, 374 n. 2 (7th Cir. 2020) (quoting *Boyd v. Ill. State Police*, 384 F.3d 888, 898 (7th Cir. 2004)). But even assuming Plaintiffs meant to bring a cause of action under the First Amendment, they still have failed to state a claim.

To state a claim for First Amendment retaliation, a plaintiff must allege "(1) he engaged in activity protected by the First Amendment; (2) he suffered a deprivation that would likely deter First Amendment activity in the future; and (3) the First Amendment activity was at least a motivating factor in the defendants' decision to take the retaliatory action." *McGreal v. Vill. of Orland Park*, 850 F.3d 308, 312 (7th Cir. 2017) (quoting *Perez v. Fenoglio*, 792 F.3d 768, 783 (7th Cir. 2015)). A deprivation is one that would "deter a person of ordinary firmness from continuing to engage in protected activity." *FKFJ, Inc. v. Vill. of Worth*, 11 F.4th 574, 585 (7th Cir. 2021) (citation omitted). "The retaliatory action itself need not amount to an independent constitutional violation." *Patton v. Indiana Univ. Bd. of Trustees*, No. 120CV00699TWPMJD, 2022 WL 3716522, at *17 (S.D. Ind. Aug. 29, 2022) (citing *Hoskins v. Lenear*, 395 F.3d 372, 375 (7th Cir. 2005)). "[T]he law

merely requires some negative consequence (deprivation) with a chilling effect on First Amendment activity." *Id.*

With regard to Wright, Detering, and Finders, Plaintiffs allege that R.C. engaged in protected activity—complaining to the School Defendants about B.L. calling him the n-word—but they have not alleged R.C. suffered any deprivation that would deter First Amendment activity in the future. While Plaintiffs claim these Defendants did nothing in response to R.C.'s complaints of harassment, there are no allegations that R.C. suffered a negative consequence for reporting the harassment that would chill future First Amendment activity. With regard to Officer Smith and Trooper Goines, Plaintiffs have not alleged that R.C. was engaged in any protected activity the night of September 24, 2021, or that the officers involved that evening knew about R.C.'s prior complaints of harassment to Wright, Detering, and Finders.

To the extent Plaintiffs are trying to claim that Officer Smith and Trooper Goines pulled R.C. out of the truck and detained him as part of a preconceived plan to retaliate against R.C. for his protected speech to Wright, Detering, and Finders, again, there are no facts to support a conspiracy existed between these Defendants. Plaintiffs have alleged that R.C.'s girlfriend was involved in a physical fight, and that R.C. and M.P. got in R.C.'s truck in an attempt to leave the parking lot. Officer Smith and Trooper Goines, who happened to be attending the homecoming football game, then pulled R.C. out of the truck and detained him. It would be unreasonable to infer that the officers—one local and one Illinois state trooper—removed R.C. from the truck as part of an agreement to retaliate against R.C. for his complaints of racial harassment to school administrators six months earlier. Rather, the reasonable inference from the facts alleged is that Officer Smith and Trooper Goines were attempting to prevent R.C. and M.P. from leaving the school grounds after M.P. had just punched another girl in the face. Plaintiffs' claim in Count 4 for conspiracy to retaliate in violation of the First Amendment fails.

E.  **Count 6: Conspiracy to Falsely Arrest in Violation of R.C.'s Fourth and Fourteenth Amendment Rights**

In Count 6, Plaintiffs allege Anna Police Officers Hand, Clover, Smith, and Sims and Trooper Goines, acting pursuant to a conspiracy, falsely arrested and detained R.C. without probable cause in violation of the Fourth and Fourteenth Amendments. (Doc. 59).

As an initial matter, Plaintiffs have not asserted any facts regarding Defendant Brentley Sims's personal involvement in the incidents alleged in the Amended Complaint. Absent any facts alleging Sims's personal involvement in depriving R.C. of his constitutional rights, there is no basis for retaining him in this lawsuit. *See Carmody v. Bd. of Trustees of Univ. of Illinois*, 893 F.3d 397, 401 (7th Cir. 2018) ("Individual liability pursuant to § 1983 requires personal involvement in the alleged constitutional deprivation."). Accordingly, Defendant Sims will be dismissed without prejudice.

As to the remaining Defendants, Plaintiffs have alleged no facts indicating the Anna Police Officers and Trooper Goines entered an agreement to deprive R.C. of his constitutional rights by falsely arresting him. *See Cooney v. Rossiter*, 583 F.3d 967, 970 (7th Cir. 2009) (a bare allegation of conspiracy or the mere suspicion that persons adverse to the plaintiff joined a conspiracy is not enough to survive a motion to dismiss for failure to state a claim); *but see Gardunio v. Town of Cicero*, 674 F. Supp. 2d 976, 986 (N.D. Ill. 2009) (plaintiff stated a claim for conspiracy to falsely arrest when plaintiff alleged defendants agreed to unlawfully arrest him, manufactured evidence against him, withheld existence of exculpatory evidence, and did so at the direction of another defendant). Instead, the facts alleged in the Amended Complaint indicate Officer Smith and Trooper Goines were at the football game and detained R.C. to prevent R.C. and M.P from leaving the parking lot in light of the physical fight that had just occurred between H.L. and M.P. Plaintiffs allege no facts whatsoever indicating Officer Hand was even involved in R.C.'s arrest. Without any plausible allegations of a conspiracy among Defendants, this claim must be dismissed.

**F.  Count 8: Conspiracy to Falsely Arrest in Violation of Misti Cannon's Fourth and Fourteenth Amendment Rights**

In Count 8, Plaintiffs allege Officers Hand, Clover, and Smith and Trooper Goines falsely arrested Misti Cannon pursuant to a conspiracy. The Amended Complaint alleges that these Defendants arrested and detained Misti for more than one hour, but she was not charged with a crime. (Doc. 59). Plaintiffs claim Misti did nothing other than enter onto the High School parking lot before she was detained, and that three other officers on the scene advised Defendants they did not have the right to arrest Misti because she was on public property at a public event. (*Id.*). Plaintiffs claim the officers acted pursuant to a preconceived plan to arrest or detain Misti any time she appeared on the school grounds. (*Id.*).

Once again, Plaintiffs allege no facts to indicate these Defendants reached an agreement to deprive Misti of her constitutional rights. Plaintiffs' vague allegation that Defendants' agreed to arrest Misti if she came on school property, when these Defendants worked for two different law enforcement agencies and arrived at the scene at different times, is not enough to plausibly claim that Defendants acted pursuant to a conspiracy.

**G.  Count 10: Conspiracy to Violate Roger Cannon's Due Process Rights**

Count 10 of the Amended Complaint alleges Defendants Wright, Detering, Finders, Hand, and Clover, acting pursuant to a conspiracy, violated Roger Cannon's procedural and substantive due process rights under the Fourteenth Amendment[3] when they banned him from the High School grounds and then arrested him for violating the ban. (Doc. 59).

Wright, Detering, and Finders contend that Plaintiffs' substantive due process claim in Count 10 should be dismissed because there are other, more specific constitutional rights that are potential sources of protection. They argue it is well-settled that "[w]here a particular

---

[3] The Amended Complaint references the First Amendment, which Plaintiffs note was a "scrivener's error." Thus, the Court considers the due process claim as if raised under the Fourteenth Amendment.

Amendment provides an explicit textual source of constitutional protection against a particular sort of government behavior, that Amendment, not the more generalized notion of 'substantive due process,' must be the guide for analyzing these claims." *Albright v. Oliver*, 510 U.S. 266, 273 (1994) (quoting *Graham v. Connor*, 490 U.S. 386, 395 (1989)). Because the governmental interference alleged by Plaintiffs implicates Roger Cannon's right to free speech, the claim is better raised under the First Amendment—as it is in Count 12. They also argue Plaintiffs have not plausibly alleged a conspiracy between Detering, Wright, Finders, Officer Hand, and Officer Clover to violate his constitutional rights. In response, Plaintiffs argue that the Notice banning Roger from school grounds was issued without notice to Roger and without providing him with an opportunity to be heard. Thus, his due process rights were violated.

The Court agrees with Defendants that Plaintiffs' claim should be dismissed, but for a different reason. The Due Process Clause of the Fourteenth Amendment to the United States Constitution provides that "[n]o State shall ... deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV. When a plaintiff asserts a due process claim, the court must first determine whether the plaintiff was deprived of a protected liberty or property interest. *Hannemann v. S. Door Cnty. Sch. Dist.*, 673 F.3d 746, 752 (7th Cir. 2012); *New Burnham Prairie Homes, Inc. v. Vill. of Burnham*, 910 F.2d 1474, 1479 (7th Cir. 1990) (quoting *Board of Regents v. Roth*, 408 U.S. 564, 577 (1972) ("Before a party may assert a due process argument—procedural or substantive—it must establish that it has a 'legitimate claim of entitlement' to the right being asserted.")). In the absence of a protected life, liberty, or property interest, a plaintiff cannot establish a due process claim.

The Seventh Circuit has held that "members of the public do not have a constitutional right to access school property." *Id.* In *Hannemann*, a school district banned a former student from school property without notice or an opportunity to be heard. *Id.* at 750. The ban explained that

entry onto school grounds would be considered a trespass. *Id.* But the former student continued to use the school's weight room and drove onto school grounds to pick up friends, and he was given a citation for trespassing. *Id.* The individual then filed suit challenging the ban on First Amendment, equal protection, and due process grounds. *Id.*

The Seventh Circuit affirmed the district court's grant of summary judgment to the defendants, holding that the plaintiff had no protected liberty interest in accessing school property. *Id.* at 755-56 (citing *Lovern v. Edwards*, 190 F.3d 648, 655–56 (4th Cir. 1999) (affirming the dismissal of a parent's claim regarding his ban from school property and stating that "[s]chool officials have the authority to control students and school personnel on school property, and also have the authority and responsibility for assuring that parents and third parties conduct themselves appropriately while on school property"); *Henley v. Octorara Area Sch. Dist.*, 701 F.Supp. 545, 551 (E.D. Pa. 1988) ("The right to come onto the school property was not such a right as to require any sort of a due process hearing before making the classification that excluded [the non-student]."). Because the plaintiff failed to establish that the ban deprived him of a protected liberty interest, his procedural due process claim failed. *Id. See also J.S. v. Machnester Cmty. Sch. Corp.*, No. 3:19-CV-421 DRL-MGG, 2019 WL 7283285, at *3 (N.D. Ind. Dec. 23, 2019) (because plaintiff had no right to be on school property, he could not maintain a procedural or substantive due process claim against the defendants); *Mejia v. Holt Public Schools*, 2002 WL 1492205 (W.D. Mich. 2002) ("A school may ban a person, including a parent, from going to school property . . . without any fundamental right to go onto or access school property.").

Here, as a non-student, Roger had no constitutional right to access school grounds. Thus, even if Roger had alleged a conspiracy among these Defendants, without a protected property or liberty interest, his procedural and substantive due process claims must be dismissed.

**H. Count 12: Conspiracy to Violate Roger Cannon's Free Speech Rights Under the First and Fourteenth Amendments**

Count 12 alleges Defendants Wright, Detering, Finders, Hand, and Clover conspired to violate Roger Cannon's free speech rights under the First and Fourteenth Amendments when Roger was barred from public events at the High School, without reasonable grounds, and when Roger was then arrested for allegedly violating the ban notice. (Doc. 59).

In their motion to dismiss, Officers Hand and Clover assert that the Amended Complaint affirms that Roger was banned from school grounds, meaning they had probable cause to arrest Roger for trespassing when he appeared on school property. Defendants Wright, Detering, and Finders argue Plaintiffs have failed to plausibly allege a conspiracy to violate Roger's constitutional rights. In response, Plaintiffs contend Roger had a First Amendment right to be present on school grounds during public events such as the homecoming football game, a right that Defendants violated.

The First Amendment "does not guarantee access to property simply because it is owned or controlled by the government." *United States Postal Service v. Council of Greenburgh Civic Assns.*, 453 U.S. 114, 129 (1981). "The Supreme Court has established that the limits, if any, the government can place on the expression of protected speech depends on the nature of the forum the speaker seeks to employ." *Vukadinovich v. Bd. of Sch. Trustees of Michigan City Area Sch.*, 978 F.2d 403, 409 (7th Cir. 1992) (citing *Frisby v. Schultz*, 487 U.S. 474, 479 (1988); *Perry Educ. Ass'n v. Perry Local Educators' Ass'n*, 460 U.S. 37, 44 (1983)). There are three types of fora: (1) the traditional public forum; (2) the public forum created by government designation; and (3) the nonpublic forum. *Id.* "Public schools are of the second type; they become public fora only if school authorities have by policy or by practice opened those facilities for indiscriminate use by the general public or by some segment of the public such as student organizations." *Id.* (cleaned up

and quoting *Hazelwood School Dist. v. Kuhlmeier*, 484 U.S. 260, 267 (1988)). If a school is not made a public forum, "the public is not invited in, period." *Id.*

"The government does not create a public forum by inaction or by permitting limited discourse, but only by intentionally opening a nontraditional forum for public discourse." *Hazelwood Sch. Dist. v. Kuhlmeier*, 484 U.S. 260, 267 (1988). As the Supreme Court has explained, "public schools do not possess all of the attributes of streets, parks, and other traditional public forums that . . . have been used for purposes of assembly, communicating thoughts between citizens, and discussing public questions." *Id.*

In this case, Plaintiffs claim the football field and parking lot were open to the public generally at the time Roger was arrested and direct the Court to *Johnson v. Perry*, 859 F.3d 156, 175 (2d Cir. 2017). There, the Second Circuit held that a school creates a public forum when it invites the attendance of the public for sporting events. *Id.* Plaintiffs then conclusively argue that Roger's First Amendment free speech rights were violated when Roger was banned from school property and arrested when he entered the parking lot to pick up R.C.

A mere ban on attending sporting events at a public school is not enough to state a claim for a First Amendment violation. The court in *Johnson* went on to explain that a school may regulate access to its property when it is being used as a limited public forum "only if its restrictions are reasonable and viewpoint-neutral." *Id.*; *see also Kugler v. Bd. of Educ. of the City of Chicago*, No. 16 C 8305, 2017 WL 3581176, at *8 (N.D. Ill. Aug. 18, 2017) (quoting *Rosenberger v. Rector & Visitors of Univ. of Va.*, 515 U.S. 819, 829 (1995) ("The State may not exclude speech where its distinction is not reasonable in light of the purpose served by the forum, nor may it discriminate against speech on the basis of its viewpoint.").

None of the parties addressed this issue. In fact, none of the parties truly address Plaintiffs' First Amendment claims with any intricate analysis. Assuming Plaintiffs' facts are true, however,

a jury could find that the statements in the Notice of Bar are false, Roger Cannon did not threaten

school officials at all, and the Notice was issued in retaliation for Roger's complaints about R.C.

being harassed. In that event, the school's restriction on Roger's attendance at sporting events

held after school hours would not be reasonable or viewpoint-neutral. For those reasons, the

Court finds that Plaintiffs' claim in Count 12 against Wright, Detering, and Finders survives their

motion to dismiss. Count 12 will be dismissed against Hand and Clover, however, because there

are no plausible allegations that these officers conspired with Wright, Detering, and Finders to

violate Roger's First Amendment free speech rights by banning him from school property

without reasonable grounds.

### I.   Count 14: Conspiracy to Use Excessive Force in Violation of Roger Cannon's Fourth and Fourteenth Amendment Rights

Plaintiffs next claim that Officers Hand and Clover used excessive force in arresting Roger

Cannon by placing his hands behind his back and handcuffing him, causing an acromioclavicular

separation in his right shoulder. (Doc. 59). Plaintiffs assert Roger advised Defendants that he

could not put his hands behind his back due to a previous shoulder surgery. (*Id*.). Plaintiffs

further claim Officers Hand and Clover acted pursuant to a conspiracy. (*Id*.).

Officers Hand and Clover move to dismiss Count 14 because, while Plaintiffs allege Roger

Cannon told officers about his shoulder surgery, there are no allegations that Roger actively

complained of pain or suffering. Thus, his complaint of being placed in handcuffs behind his

back, as is common practice for an arrest, does not meet the definition of excessive force as a

matter of law.

Defendants rely on *Howell v. Smith*, 853 F.3d 892, 897 (7th Cir. 2017), in which the Seventh

Circuit discussed the Fourth Amendment's reasonableness standard in the context of qualified

immunity. There, a driver who had allegedly shot at another vehicle in a road rage incident was

pulled over and handcuffed as part of a "high-risk traffic stop." *Id.* at 895-96. According to the

officer, the driver did not complain of any pain, but the driver maintained that he told the officer he could not stretch his arm behind his back due to a recent surgery. *Id.* at 896. He also claimed to have told another officer he was in pain. *Id.* The driver ultimately was released and later had multiple shoulder surgeries. *Id.*

In gauging the reasonableness of the officer's actions, the court noted that it must evaluate the totality of the circumstances and perform a "careful balancing of the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake." *Id.* at 898 (citations omitted). "The nature and extent of the force that may be used depends upon the circumstances surrounding an arrest, including 'the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight.'" *Id.* (quoting *Stainback v. Dixon*, 569 F.3d 767, 772 (7th Cir. 2009)). An officers' actions are viewed in "the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight," recognizing officers often need to make split-second judgments. *Id.* (quoting *Graham v. Connor*, 490 U.S. 386, 396-97 (1989)).

Specifically with regard to the use of handcuffs, "[a] person has the right to be free from an officer's knowing use of handcuffs in a way that would inflict *unnecessary* pain or injury, *if* that person presents little or no risk of flight or threat of injury." *Id.* (quoting *Rooni v. Biser*, 742 F.3d 737, 742 (7th Cir. 2014)). Focusing on the information the officer had at the time of the incident, particularly that the driver was suspected of discharging a firearm on a highway and the individual did not explicitly state he was in pain or suffering from the handcuffs, the *Howell* court found that the officer did not violate the Fourth Amendment. *Id.* at 900 (the information provided about the suspect driver's recent shoulder surgery "clearly did not outweigh the very concrete information about the crime and the circumstances under which it was allegedly committed").

Relying solely on *Howell*, Defendants assert that Roger's claim regarding his shoulder is insufficient to state a claim for excessive force. The Court disagrees. Plaintiffs allege Roger came onto school property to pick up his son. When he arrived, he was arrested for misdemeanor trespassing; he was not armed and did not otherwise pose a safety threat to the officers, and he did not attempt to resist arrest or flee. Despite informing the officers that he could not put his hands behind his back due to a previous shoulder surgery, the officers handcuffed him behind his back anyway, causing an acromioclavicular separation that required further medical treatment. Based on the information the officers had available to them at that time, the Court finds that Plaintiffs have plausibly alleged a violation of Roger Cannon's constitutional rights.

**J.   Counts 15 and 16: *Monell* Claims Against the City of Anna, the Anna Police Department, and the District for Violating Plaintiffs' Fourth and Fourteenth Amendment Rights**

In Count 15, Plaintiffs claim that, as a direct result of the policies established by the City of Anna and the Anna Police Department, as well as their failure to hire and train police officers to perform their duties in a non-discriminatory manner, Plaintiffs' Fourth and Fourteenth Amendment rights were violated. Likewise, in Count 16, Plaintiffs allege that their Fourth and Fourteenth Amendment rights were violated a result of the District's deficient hiring and training practices, as well as its deliberate indifference to its duty to treat all students equally.

Because the Court has found that Plaintiffs have failed to state a claim for any underlying constitutional violations related to race or discrimination, Plaintiffs' *Monell* claims also must be dismissed. *See Swanigan v. City of Chicago*, 775 F.3d 953, 962 (7th Cir. 2015) ("If the plaintiff fails to prove a violation of his constitutional rights in his claim against the individual defendants, there will be no viable *Monell* claim based on the same allegations."). Here, the only claims that have survived Defendants' motions to dismiss are Roger Cannon's claim regarding his First Amendment free speech rights in Count 12 and his Fourth Amendment excessive force claim in

Count 14. Neither of these claims involve Defendants' failure to provide adequate race training, given that Roger is Caucasian. Accordingly, Counts 15 and 16 will also be dismissed.

CONCLUSION

For these reasons, the Motion to Dismiss filed by Defendant Roger Goines (Doc. 64) is **GRANTED in part and DENIED in part**. Defendant Goines is **DISMISSED without prejudice**.

The Motion to Dismiss filed by Anna-Jonesboro Community High School District #81, Brett Detering, Scott Finders, and Rob Wright (Doc. 65) is **GRANTED in part and DENIED in part**. The Motion to Strike filed by these Defendants (Doc. 67) is **DENIED**. Defendant Anna-Jonesboro Community High School District #81 is **DISMISSED without prejudice**.

The Motion to Dismiss filed by the City of Anna, Illinois, the Anna Police Department, Caleb Clover, Cody Hand, Brentley Sims, and Tim Smith (Doc. 69) is **GRANTED in part and DENIED in part**. Defendants Brentley Sims, Tim Smith, the City of Anna, Illinois, and the Anna Police Department are **DISMISSED without prejudice**.

Plaintiffs shall proceed on their claims in **Count 12** (Conspiracy to Violate Roger Cannon's Free Speech Rights Under the First and Fourteenth Amendments against Defendants Wright, Detering, and Finders) and **Count 14** (Conspiracy to Use Excessive Force in Violation of Roger Cannon's Fourth and Fourteenth Amendment Rights against Defendants Hand and Clover) only. A scheduling conference will be set by separate order.

**IT IS SO ORDERED.**

**DATED:   March 3, 2023**

_____
**NANCY J. ROSENSTENGEL**
**Chief U.S. District Judge**